UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                                         :
  ALI AL NAHAM, *et al.*,                                :
                                                         :
                                      Plaintiffs,        :
                                                         :
                        -v-                              :              14-CV-9974 (JPO)
                                                         :
  UNITED STATES DEPARTMENT OF STATE,                     :          OPINION AND ORDER
  *et al.*,                                              :
                                                         :
                                      Defendants.        :
---------------------------------------------------------X

J. PAUL OETKEN, District Judge:

 Plaintiffs Ali Al Naham, his wife, and their three children, bring this action against the United States Department of State, Secretary of State John Kerry, the Deputy Assistant Secretary for Visa Services, and the Director of the National Visa Center ("NVC") (collectively, "Defendants") in connection with Defendants' failure to adjudicate visa applications filed by the wife and children, who reside in Yemen. Plaintiffs seek declaratory relief and an order compelling Defendants to schedule interviews and to adjudicate the pending visa applications. Now before the Court are Defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the 12(b)(1) motion is granted and the 12(b)(6) motion is denied as moot.

I.      **Background**[1]

A.      **The Petition's Allegations**

Plaintiff Ali Al Naham ("Al Naham") is a lawful permanent resident ("LPR") of the United States.[2]  His wife and three children are citizens and residents of Yemen.  (Dkt. No. 1 ("Petition"), ¶¶ 7–10.)  In an effort to bring his wife and children to the United States, Al Naham filed several Forms I-130, known as "Petition[s] for Alien Relative," on their behalf.[3]  (*Id.* ¶ 15.)  The United States Citizenship and Immigration Services ("USCIS") approved the petitions and forwarded them to the NVC in 2007.  (*Id.*)  Plaintiffs then prepared their visa applications and sent them to the NVC in anticipation of interviews at the United States embassy in Sana'a, Yemen.  (*Id.* ¶ 16.)

Those interviews have not yet taken place.  In 2010, the NVC twice directed Plaintiffs to refile their visa applications.  (*Id.* ¶¶ 18–19.)  Plaintiffs did so, but heard nothing further.  (*Id.* ¶ 21.)  Several years later, the NVC again directed Plaintiffs to file their visa applications online.  (*Id.* ¶ 22.)  Plaintiffs did so on January 21, 2014.  (*Id.* ¶ 23.)  In subsequent correspondence, the NVC informed Plaintiffs that "the cases were complete and waiting to be scheduled."  (*Id.* ¶¶ 26, 31, 32, 34.)  No interviews have been scheduled since.[4]

---

[1] A court may properly refer to evidence outside the pleadings on a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1).  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[2] The Petition erroneously states that Naham is a U.S. citizen.  (*See* Dkt. No. 13, at 3 n.1.)

[3] Two of the children, Musheer Ali Mohamed Al Naham ("Musheer") and Wuroud Ali Al Naham ("Wuroud"), are principal beneficiaries of separate petitions filed by Al Naham.  (Dkt. No. 10 ¶ 3.)  Al Naham has not filed a petition on behalf of his third child, Ikbal Al Naham, but he is eligible to be a derivative beneficiary of the petition filed on behalf his mother, Jannah Al Naham ("Jannah").  (*Id.* ¶¶ 4–5.)

[4] Defendants dispute Plaintiffs' characterization of these events.  They contend that "Plaintiffs were not eligible to apply for an immigrant visa until June 2010," and that they "did not start submitting their applications or supporting documents to NVC until late 2010."  (Dkt. No. 18, at

Defendants' conduct, the Petition alleges, has caused Plaintiffs "severe emotional and financial hardship" and "unlawfully infringe[s] upon" Al Naham's constitutional interests.  (*Id.* ¶¶ 38–44.)  Plaintiffs accordingly seek declaratory relief and an order, pursuant to the mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), compelling Defendants to schedule their interviews and adjudicate their visa applications within thirty days.[5]

### B.    The Situation in Yemen

Defendants argue that the United States embassy in Sana'a has been unable schedule interviews or adjudicate applications because of the precarious security situation there.  (Dkt. No. 8 ("Def. Memo"), at 1.)  The U.S. embassy compound was attacked by a mob on September 13, 2012.  (Dkt. No. 9, Ex. A.)  About one month later, a Yemeni citizen employed by the embassy was killed.  (*Id.* Ex. B.)  On August 6, 2013, citing a "high security threat level in Yemen due to terrorist activities and civil unrest," the State Department ordered the departure of non-emergency U.S. government personnel from Yemen and issued an advisory to U.S. citizens living there to "depart immediately."  (*Id.* Ex. C.)  The embassy in Sana'a was, for some time, closed for all but urgent cases.  (*Id.* Ex. D.)

The State Department lifted the ordered departure for non-emergency personnel in January 2014, but the embassy was able to provide routine consular services on only a limited

---

7.)  According to Defendants, Plaintiffs' cases could not be placed in the queue for a visa interview until they were "documentarily qualified," which did not occur until 2012 for Wuroud and 2014 for Musheer and Jannah.  (*Id.* at 7–8.)

[5] Although the Petition makes reference to Al Naham's rights to procedural and substantive due process (Petition ¶¶ 43–44), the Court does not construe it as raising a constitutional claim against Defendants.  In any event, any constitution claim advanced by Al Naham would be dismissed.  *See Li v. Chertoff*, 06-CV-13679 (LAP), 2007 WL 541974, at *2 (S.D.N.Y. Feb. 16, 2007) ("[I]t cannot be that the mere failure to 'act upon' the visa applications [of Plaintiff's relatives] violates any of Plaintiff's constitutional rights.").

basis.  (*Id.* Ex. E.)  Beginning in May 2014, the embassy remained closed for five weeks because

of security threats, and again provided only limited routine consular services after the State

Department ordered a reduction of government personnel in Yemen in September 2014.  (*Id.* Ex.

E.)  Terrorist attacks occurred frequently in Yemen for several months thereafter (*id.* Exs. G–K),

and on February 8, 2015, the embassy suspended all routine consular services and provided

emergency services only (*id.* Ex. M).  The embassy advised that, because of closures and staffing

interruptions, it was "experiencing extremely long wait times for Immigrant Visa interviews."

(*Id.* at 3.)  Three days later, the State Department suspended all services, routine and emergency,

and relocated embassy staff out of the country.  (*Id.* Ex. N.)  At the time Defendants filed their

motions to dismiss on February 23, 2015, the embassy in Sana'a remained closed, but the

following day the State Department announced that the U.S. embassy in Cairo would "handle

Immigrant Visa cases emanating out of Yemen, as well as process visas for Yemeni citizens."

(Dkt. No. 19, Ex. D.)

Plaintiffs argue that they have been awaiting adjudication of their visa applications since

"well before" any of the security issues cited by Defendants arose, and that Defendants have

refused to consider reasonable alternatives suggested by Plaintiffs, including conducting visa

interviews in other countries.  (*See* Dkt. No. 13, at 1–2.)

## II.    Legal Standard

Defendants move to dismiss this action for lack of subject matter jurisdiction, pursuant to

Federal Rule 12(b)(1).[6]  "Generally, a claim may be properly dismissed for lack of subject matter

---

[6] Although Defendants also move to dismiss for failure to state a claim pursuant to Rule
12(b)(6), a court presented with motions to dismiss under Rules 12(b)(1) and 12(b)(6) must
resolve the former first.  *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 664 (S.D.N.Y. 2010) (citing,
*inter alia*, *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).
Because the Court grants Defendants' 12(b)(1) motion, their 12(b)(6) motion is denied as moot.

jurisdiction where a district court lacks constitutional or statutory power to adjudicate it."
*Kingsley v. BMW of N. Am. LLC*, 12-CV-234, 12-CV-350 (JPO), 2012 WL 1605054, at *2
(S.D.N.Y. May 8, 2012) (Oetken, J.).  "In resolving a motion to dismiss under Rule 12(b)(1), the
district court must take all uncontroverted facts in the complaint (or petition) as true, and draw
all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon v. Captain's Cove
Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  At the same time, the court has
"the power and obligation" to decide disputed jurisdictional facts by reference to materials
outside the pleadings, including affidavits.  *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)
(internal quotation marks omitted).  In that case, the party asserting subject matter jurisdiction
bears the burden of proving it by a preponderance of the evidence.  *Tandon*, 752 F.3d at 243
(quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

## III.    Discussion

Defendants contend that the doctrine of consular nonreviewability bars the Court from
adjudicating Plaintiffs' claims.  The Court agrees.

The doctrine of consular nonreviewability is based on "the principle that a consular
officer's decision to deny a visa is immune from judicial review."  *Am. Acad. of Religion v.
Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009).[7]  The doctrine has its basis in the plenary power
doctrine:  "The power of Congress to exclude aliens altogether from the United States, or to
prescribe the terms and conditions upon which they may come to this country, and to have its

---

[7] While consular nonreviewability is often treated as bearing on a court's subject matter
jurisdiction, *see, e.g.*, *Saleh v. Holder*, __ F. Supp. 3d __, 2014 WL 7751230, at *3 (E.D.N.Y.
Nov. 4, 2014), "[t]he Second Circuit has [recently] expressed doubt about whether the doctrine
of consular nonreviewability is best understood as a question of subject matter jurisdiction, rather
than withdrawal of federal jurisdiction under certain circumstances, or 'prudential
considerations, perhaps arising from separation of powers concerns.'"  *Khanom v. Kerry*, 37 F.
Supp. 3d 567, 573 n.4 (E.D.N.Y. 2014) (quoting *Am. Acad. of Religion*, 573 F.3d at 123).

declared policy in that regard enforced exclusively through executive officers, without judicial

intervention." *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) (quoting *Kleindienst*

*v. Mandel*, 408 U.S. 753, 766 (1972)); *see also Castillo v. Rice*, 581 F. Supp. 2d 468, 475

(S.D.N.Y. 2008).  The Second Circuit has recognized an exception to consular nonreviewability

where certain kinds of constitutional claims are at issue, *Am. Acad. of Religion*, 573 F.3d at 125

("[W]here a plaintiff, with standing to do so, asserts a First Amendment claim to have a visa

applicant present views in this country, we should [not apply consular nonreviewability] to a

consular officer's denial of a visa."), but the doctrine is otherwise treated as nearly absolute.

Plaintiffs do not meaningfully dispute the above.  They contend, however, that the

doctrine is limited to cases in which a plaintiff challenges an official's discretionary decision to

approve or deny a visa application.  It has no applicability, they argue, where a plaintiff seeks to

compel an official to simply adjudicate a visa application.

Other circuits have recognized that distinction as having some force.[8]  *See, e.g.*, *Patel v.

Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997) ("Normally a consular official's discretionary

decision to grant or deny a visa petition is not subject to judicial review.  However, when the suit

challenges the authority of the consul to take or fail to take an action as opposed to a decision

taken within the consul's discretion, jurisdiction exists." (citations omitted)).  But, whatever this

---

[8] It has been suggested by courts in this circuit that the distinction between challenging a visa
denial, on one hand, and a failure to adjudicate a visa application, on the other, is "one of form,
not substance," because "[n]o person submits a visa application and then files a lawsuit seeking
to compel a decision on that application, without seeking a favorable outcome."  *Li*, 2007 WL
541974, at *1 n.2.  The distinction is not meaningless, however, even if it is not one that the
Second Circuit has given legal significance.  It may be true that all applicants who bring suit do
so in the hope that their application will be granted.  But applicants are likely to have an
independent interest in finality that is frustrated by the absence of any decision, favorable or not.
*Cf. Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) (noting that allowing the
government to hold adjustment of status applications in abeyance may "relegate aliens to a state
of 'limbo'" and "leav[e] them to languish there indefinitely").

distinction's merits, it is not one that has a basis in Second Circuit law.  *See Hsieh*, 569 F.2d at

1181 ("[N]o jurisdictional basis exists for review of the action of the American Consul . . .

*suspending* or denying the issuance of immigration visas . . . .  It is settled that the judiciary will

not interfere with the visa-issuing process." (emphasis added)); *Li v. Chertoff*, 06-CV-13679

(LAP), 2007 WL 541974, at *1 (S.D.N.Y. Feb. 16, 2007) (rejecting the plaintiff's attempt "to

circumvent . . . long-standing precedent by contending that [consular nonreviewability] does not

apply to a request that a visa be adjudicated (as opposed to granted) within a reasonable period of

time"); *Saleh v. Holder*, __ F. Supp. 3d __ , 2014 WL 7751230, at *3 (E.D.N.Y. Nov. 4, 2014)

(same); *Foad v. Holder*, 13-CV-6049, 2015 WL 1540522, at *3 (E.D.N.Y. Apr. 7, 2015)

(same).[9]  Accordingly, consular nonreviewability precludes jurisdiction over Plaintiffs' action.

---

[9] Plaintiffs find support in two decisions of district courts in this circuit, *American Academy of Religion v. Chertoff*, 463 F. Supp. 2d 400 (S.D.N.Y. 2006), and *Kim*, 340 F. Supp. 2d 384.  In *Chertoff*, the court rejected the government's argument that the court lacked authority to compel adjudication of a visa application, and held that "failure to issue or refuse a visa within a reasonable period of time triggers mandamus jurisdiction in federal court."  340 F. Supp. 2d at 421.  But *Chertoff*'s holding that the doctrine of consular nonreviewability did not apply was based on the fact that the plaintiffs were U.S. citizens advancing constitutional claims.  *Id.* at 417; *see also Saleh v. Holder*, 2014 WL 7751230, at *3 n.2.  The Court is not presented with such a claim here.

As for *Kim*, the court there found that it had jurisdiction over the plaintiff's action seeking to "compel action" on—rather than simply grant or deny—his adjustment of status application.  340 F. Supp. 2d at 387.  The court reasoned that it had jurisdiction because defendants' alleged violation of section 6 of the APA—which requires an agency to, "within a reasonable time, . . . proceed to conclude a matter presented to it"—brought the action within the ambit of federal question jurisdiction.  *Id.* at 388–91.  *Kim* dealt with adjustment of immigration status, not visa applications, but to the extent that it also stands for the proposition that consular reviewability may not apply where a plaintiff challenges a consular official's failure to adjudicate a visa application, the Court declines to follow it.

**IV.** **Conclusion**

For the foregoing reasons, Defendants' 12(b)(1) motion to dismiss is GRANTED and their 12(b)(6) motion is DENIED as moot.  The Clerk of Court is directed to close the motions at docket number seven and to close this case.


SO ORDERED.

Dated: June 1, 2015
New York, New York

_____
J. PAUL OETKEN
United States District Judge

8